No. 115,656

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALVIN P. HORSELOOKING, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

Interpretation of a sentencing statute is a question of law over which appellate courts have unlimited review.

2.

K.S.A. 2015 Supp. 21-6811(e)(1) mandates that out-of-state convictions shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If the crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas. If the crime is a misdemeanor in the convicting jurisdiction, it will be scored as a misdemeanor in Kansas, and the sentencing court shall refer to the comparable Kansas offense to determine whether it should be classified as a class A, B, or C misdemeanor.

3.

The Kansas Sentencing Guidelines Act contains no explicit language on how to classify an out-of-state conviction as a felony or a misdemeanor for criminal history purposes where the convicting jurisdiction does not designate crimes as felonies or misdemeanors.

1

4.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. Only when a statute's text or language is ambiguous does the court turn to canons of construction or legislative history to construe the legislature's intent.

5.

Generally, it is not the job of an appellate court to create judicially constructed remedies to a flawed sentencing scheme; instead, any defect is for the legislature alone to remedy.

6.

Under the rule of lenity, when a criminal statute is silent or ambiguous on a matter, the statute must be construed in favor of the accused.

7.

Because K.S.A. 2015 Supp. 21-6811(e) is silent on how to classify an out-of-state conviction as a felony or a misdemeanor for criminal history purposes when the convicting jurisdiction does not make such a determination, then under the rule of lenity, the conviction must be classified as a misdemeanor.

Appeal from Jackson District Court; JANICE D. RUSSELL, judge. Opinion filed June 30, 2017. Vacated and remanded with directions.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

2

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and POWELL, JJ.

MALONE, J.:  Alvin P. Horselooking, Jr., appeals his sentence following his convictions of aggravated battery and driving under the influence of alcohol (DUI). The district court assigned Horselooking a criminal history score of B based in part on his Kickapoo Nation tribal conviction of residential burglary, which the district court scored as a person felony for criminal history purposes. However, the Kickapoo Nation Tribal Code does not designate burglary as being either a felony or a misdemeanor offense. As his sole issue on appeal, Horselooking claims the district court erred when it scored his prior Kickapoo tribal conviction as a felony for criminal history purposes. Because we agree with Horselooking's claim, we vacate his sentence and remand for the district court to resentence Horselooking using the correct criminal history score.

The pertinent facts are straightforward. Horselooking pled no contest to one count of aggravated battery and one count of DUI, both of which occurred on August 19, 2015. The presentence investigation report showed a criminal history score of B based in part on a 2013 Kickapoo tribal conviction of residential burglary, scored as a person felony for criminal history purposes. Horselooking filed an objection to his criminal history score prior to sentencing, arguing that his Kickapoo tribal conviction should not be scored as a felony. Specifically, Horselooking argued that the Kickapoo Nation Tribal Code does not designate crimes as felonies or misdemeanors, and the Kansas sentencing statute does not provide a mechanism for determining whether an out-of-state conviction is a felony or a misdemeanor where the convicting jurisdiction does not differentiate between the two. Horselooking asserted that his prior Kickapoo tribal conviction should have been classified as a misdemeanor for criminal history purposes, thus changing his criminal history score from B to D.

At the sentencing hearing on December 11, 2015, Horselooking renewed his argument that his Kickapoo tribal conviction of residential burglary should be scored as a misdemeanor rather than a felony for criminal history purposes because the tribal code did not designate the offense as either a felony or a misdemeanor. Horselooking did not object to the person classification of the burglary conviction. In fact, he stipulated that the burglary involved a residence.

The State cited *State v. Hernandez*, 24 Kan. App. 2d 285, Syl. ¶ 2, 944 P.2d 188, *rev. denied* 263 Kan. 888 (1997), which holds that when determining criminal history under the Kansas Sentencing Guidelines Act (KSGA), if the convicting jurisdiction does not delineate between felonies and misdemeanors, that determination is made by the sentencing court by comparing the offense to the most comparable Kansas crime. Because any method of burglary is classified as a felony in Kansas, the State argued that Horselooking's tribal conviction should be classified as a felony for criminal history purposes. The district court agreed with the State's argument and classified the Kickapoo tribal conviction as a person felony. Based on Horselooking's criminal history score of B, the district court sentenced him to 29 months' imprisonment with 12 months of postrelease supervision. Horselooking timely appealed his sentence.

On appeal, Horselooking claims the district court erred when it scored his prior Kickapoo tribal conviction of residential burglary as a felony for criminal history purposes. He renews the argument he made in district court that the tribal code does not designate crimes as felonies or misdemeanors, and the KSGA does not provide a mechanism for determining whether an out-of-state conviction is a felony or a misdemeanor where the convicting jurisdiction does not differentiate between the two. Thus, Horselooking asserts that his Kickapoo tribal conviction is either unscoreable for purposes of his criminal history or, alternatively, he argues that the tribal conviction should be scored as a misdemeanor for criminal history purposes.

4

The State argues that based on this court's prior decisions in *Hernandez* and *State v. Lackey*, 45 Kan. App. 2d 257, 246 P.3d 998, *rev. denied* 292 Kan. 968 (2011), the sentencing court should look to the comparable Kansas offense to determine whether an out-of-state conviction should be scored as a felony or a misdemeanor if the convicting jurisdiction does not differentiate between the two. But the State asserts that "if this Court decides [that *Hernandez* and *Lackey*] were wrongly decided, the State would agree with Horselooking that his crime should be scored as a misdemeanor to comply with the legislature's clear intent to have such crimes be counted in criminal history scores."

Resolution of the issue presented in this appeal requires the interpretation of the KSGA. Interpretation of a sentencing statute is a question of law, and the standard of review is unlimited. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

We begin by reviewing the applicable Kansas sentencing scheme for determining an offender's criminal history classification in effect when Horselooking committed his crimes on August 19, 2015. First, we note that convictions occurring in a tribal court are considered out-of-state convictions. K.S.A. 2015 Supp. 21-6811(e)(4). The classification of out-of-state convictions for criminal history purposes is controlled by K.S.A. 2015 Supp. 21-6811(e) which states in part:

"(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

"(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction:

(A) If a crime is a felony in another state, it will be counted as a felony in Kansas.

(B) If a crime is a misdemeanor in another state, the state of Kansas shall refer to the comparable offense in order to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable misdemeanor crime in the state of Kansas is a felony, the out-of-state crime shall be classified as a class A misdemeanor. If the state of Kansas

5

does not have a comparable crime, the out-of-state crime shall not be used in classifying the offender's criminal history."

We note that before 2015, the KSGA provided even less direction on how sentencing courts should classify out-of-state convictions as felonies or misdemeanors for criminal history purposes. Prior to the amendment that went into effect on July 1, 2015, the statute simply stated: "An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas." See K.S.A. 2014 Supp. 21-6811(e).

K.S.A. 2015 Supp. 21-6811(e)(1) mandates that out-of-state convictions and juvenile adjudications—including tribal convictions and adjudications—shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. K.S.A. 2015 Supp. 21-6811(e)(2). If the crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas. K.S.A. 2015 Supp. 21-6811(e)(2)(A). If the crime is a misdemeanor in the convicting jurisdiction, it will be scored as a misdemeanor in Kansas, and the court shall refer to the comparable Kansas offense to determine whether it should be classified as a class A, B, or C misdemeanor. K.S.A. 2015 Supp. 21-6811(e)(2)(B).

The complicating issue here is that the Kickapoo Nation Tribal Code does not differentiate between felonies and misdemeanors. The KSGA expressly provides how a sentencing court shall classify an out-of-state conviction if the crime is a felony or a misdemeanor in the convicting jurisdiction. But there is no explicit language in the KSGA explaining how a court is to classify an out-of-state conviction as either a felony or a misdemeanor when the convicting jurisdiction does not distinguish between the two.

This court first addressed this issue in 1997 in *Hernandez.* In that case, the defendant's criminal history included three military convictions for drug offenses, but

6

military convictions are not designated as felonies or misdemeanors. The defendant argued that because the sentencing statute was silent on how to classify his military convictions as felonies or misdemeanors, they had to be scored as misdemeanors. This court disagreed, noting that the fundamental rule of statutory construction is that the intent of the legislature governs where that intent can be ascertained, even though words, phrases, or clauses at some place in the statute must be omitted or inserted. 24 Kan. App. 2d at 287. This court ultimately held:

> "The legislature knows that under general principles of criminal jurisprudence, states generally divide the seriousness of crimes into two basic categories, felonies and misdemeanors. It is equally clear that the two most important factors for the court to consider in determining a sentence under the KSGA is the criminal history of the defendant and the severity of the crime committed. The specific intent of the legislature is that all prior adult felony convictions, including expungements, be considered and scored in determining a defendant's criminal history. [Citation omitted.]
>
> "We conclude the legislature intended the sentencing court to compare a prior conviction to the most comparable Kansas offense to make a felony or misdemeanor determination when such conviction occurred in a jurisdiction that does not distinguish between felonies and misdemeanors. We are convinced that such intent is clear when the pertinent parts of the KSGA are construed *in pari materia*. For us to conclude otherwise would effect an unreasonable result at odds with the legislature's manifest intent." 24 Kan. App. 2d at 288-89.

Fourteen years later, this court again addressed the same issue in *Lackey*. In that case, the defendant had three Kansas City municipal convictions for domestic violence and assault, which the sentencing court scored as one person felony under the statute that allows person *misdemeanors* to be aggregated and scored as a person felony. The defendant contested the sentencing court's determination that his municipal convictions were misdemeanors because Missouri municipal convictions are not classified as felonies or misdemeanors and instead are considered "quasi criminal" in nature. 45 Kan. App. 2d at 261. The defendant argued that because the Kansas sentencing statute provides that

7

out-of-state convictions are to be classified as felonies or misdemeanors according to the convicting jurisdiction, and because Missouri does not classify municipal convictions as felonies or misdemeanors, his Missouri municipal convictions could not be included in his criminal history score.

This court rejected the defendant's argument, finding that *Hernandez* applied:

"The *Hernandez* decision was published in 1997. A different panel of this court followed the holding a year later in *State v. Swilley*, 25 Kan. App. 2d 492, 494, 967 P.2d 339, *rev. denied* 266 Kan. 1115 (1998). Although it had ample opportunity to do so, the legislature has not modified the applicable statutes to repudiate the conclusions reached by the *Hernandez* and *Swilley* courts. Where judicial construction of a statute has been in place for a number of years, the legislature is deemed to have approved the construction, and that construction is as much a part of the statute as if embodied in it in plain and unmistakable language. [Citations omitted.]" 45 Kan. App. 2d at 264-65.

Based on the "controlling precedent" of *Hernandez*, the court in *Lackey* ruled that the sentencing court was to make the felony or misdemeanor determination by comparing the defendant's municipal convictions to the most comparable Kansas offense. 45 Kan. App. 2d at 265. This court ultimately held that the district court correctly compared the defendant's municipal ordinance convictions to the Class B misdemeanor offense of battery in Kansas. 45 Kan. App. 2d at 265.

Applying the reasoning in *Hernandez* and *Lackey*, then whether Horselooking's Kickapoo burglary conviction is a felony or a misdemeanor depends on how the comparable Kansas crime is classified. Horselooking was convicted under Title 10, Criminal Offenses, § 110 of the Kickapoo Nation Tribal Code, which defines burglary as:

"[B]reak[ing] into by any force whatsoever and enter[ing] in any manner any dwelling, office, room apartment, tenement, shop, warehouse, store, mill, barn, stable, garage, tent,

8

vessel, railroad car, airplane, motor vehicle, trailer or semitrailer, mobile home, or any similar enclosed structure of another without consent with the intent to steal or commit any offense punishable by imprisonment."

In determining the comparable Kansas crime, the court is to look to the version of the statute in effect at the time Horselooking committed the current crime of conviction. *State v. Keel*, 302 Kan. 560, 589-90, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). The comparable Kansas crime here is residential burglary. K.S.A. 2015 Supp. 21-5807(a)(1) provides that "[b]urglary is, without authority, entering into or remaining within any . . . [d]welling, with intent to commit a felony, theft or sexually motivated crime therein." "Burglary as defined in . . . [s]ubsection (a)(1) is a severity level 7, person felony." K.S.A. 2015 Supp. 21-5807(c)(1)(A). Thus, Horselooking's Kickapoo conviction for residential burglary would be a classified as a felony for criminal history purposes under *Hernandez* and *Lackey*.

Horselooking, however, argues that *Hernandez* and *Lackey* were wrongly decided and should not control the outcome of his case. For reasons we will endeavor to explain, we find this argument is quite persuasive. "As a general rule, one panel of [the] Court of Appeals is not bound by a decision of another panel of this court." *Osterhaus v. Toth*, 39 Kan. App. 2d 999, 1008, 187 P.3d 126 (2008), *aff'd* 291 Kan. 759, 249 P.3d 888 (2011). Although separate panels of the Court of Appeals should strive to be consistent in decision-making, ultimately the court must do its best to decide each case based on the facts and the law, bearing in mind that the Kansas Supreme Court is the final arbiter of all disputes.

In Kansas, a district court's authority to impose a sentence is controlled by statute. *State v. Kessler*, 276 Kan. 202, 217, 73 P.3d 761 (2003). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate

9

court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found therein. 303 Kan. at 813. Only when a statute's text or language is ambiguous does the court turn to canons of construction or legislative history to construe the legislature's intent. 303 Kan. at 813.

Here, the Kansas sentencing statute is not ambiguous or unclear; instead, it lacks any provision to explain how a court is to classify an out-of-state conviction as a felony or a misdemeanor when the convicting jurisdiction does not designate crimes as felonies or misdemeanors. In this instance, courts should refrain from speculating about the legislature's intent and should not insert a provision into the statute that the legislature failed to include—which is exactly what the panel of this court did in *Hernandez*. Generally, it is not the job of an appellate court to create judicially constructed remedies to a flawed sentencing scheme; instead, any defect is for the legislature alone to remedy. See *State v. Horn*, 291 Kan. 1, 12, 238 P.3d 238 (2010); *Kessler*, 276 Kan. at 217.

In *Keel*, our Supreme Court recently addressed a situation where the KSGA was silent on how to classify an offender's prior convictions for criminal history purposes. The specific issue in *Keel* was how sentencing courts should classify pre-KSGA convictions as person or nonperson offenses for criminal history purposes. The issue was significant because Kansas did not begin classifying crimes as person or nonperson offenses until 1993 when the KSGA was adopted. See L. 1992, ch. 239, § 1 (KSGA effective July 1, 1993). In analyzing how courts should construe the KSGA when there is no explicit language in the KSGA addressing a sentencing issue, the court stated:

> "We start out by acknowledging that there is no explicit language in the KSGA telling courts precisely how to classify in-state or out-of-state pre-KSGA convictions or

10

juvenile adjudications as person or nonperson offenses for criminal history purposes. This means we cannot merely interpret text whose meaning and effect are plain. [Citation omitted.] This also is not a situation in which there is an unclear or ambiguous statutory provision obviously meant to control the issue before us. In such circumstances, we routinely move from statutory interpretation to statutory construction. [Citation omitted.] And we have often recited that construction moves beyond text to divine legislative intent, employing legal canons and examining legislative history and other background considerations. [Citation omitted.]

"Here, in this unique circumstance, we are neither interpreting plain language nor construing ambiguous language according to the clues of legislative intent. Rather, we must interpret the entire Act, looking to the overall design and purposes of the KSGA and construing the Act according to its spirit and reason in order to determine whether the omission at issue is a reasonable indication that the matter excluded is irrelevant to the statutory scheme and the legislative intent, or whether the omission is actually a 'silence gap' that undermines—and introduces ambiguity into—other aspects of the Act. In the latter circumstance, courts are ill-equipped to fill such a gap. Often, the wisest course is for courts to defer to the legislature to act to fill such a gap. [Citations omitted.] In fact, this may fairly be characterized as this court's default position." 302 Kan. at 572-73.

In *Keel*, the court went on to hold, given the overall design and structure of the KSGA, that the classification of a pre-KSGA conviction as a person or nonperson offense for criminal history purposes is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed. 302 Kan. at 589-90. In reaching this result, the court reasoned, in part, that "[d]espite the lack of explicit person/nonperson designations for pre-KSGA crimes, the legislature clearly contemplated that such crimes would be scored (*i.e.*, classified) as a particular type of prior conviction as listed in K.S.A. 1993 Supp. 21-4710(a)." 302 Kan. at 577.

Returning to the issue before us, the KSGA is silent on how to classify an out-of-state conviction as a felony or a misdemeanor for criminal history purposes where the convicting jurisdiction does not differentiate between the two. In this circumstance, we are neither interpreting plain language nor construing ambiguous language to attempt to

11

ascertain legislative intent. This situation would appear to be what our Supreme Court in *Keel* described as a "silence gap." See 302 Kan. at 573. As the court stated in *Keel*, "the wisest course is for courts to defer to the legislature to act to fill such a gap. . . . In fact, this may fairly be characterized as this court's default position." 302 Kan. at 573.

In *Hernandez*, this court "filled the gap" in the KSGA by holding that the sentencing court must look to the most comparable Kansas crime to determine whether an out-of-state conviction is a felony or a misdemeanor where the convicting jurisdiction does not make such a determination. 24 Kan. App. 2d at 288-89. The court reasoned that to conclude otherwise "would effect an unreasonable result at odds with the legislature's manifest intent." 24 Kan. App. 2d at 289. But it is not for an appellate court to remedy this apparent flaw in the sentencing scheme; instead, it is for the legislature alone to do so. *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013) ("We cannot delete provisions or supply omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it . . . the defect is one that the legislature alone can correct.").

Moreover, *Lackey*'s reasoning that the legislature's failure to amend or modify the sentencing statute after *Hernandez*' judicial construction constituted legislative approval of this court's interpretation is not compelling. Our Supreme Court has made clear that "'[m]ore important [than legislative acquiescence] is the application of the doctrine of statutory interpretation that directs us to consider the plain language of the statutes.' [Citation omitted.]" *State v. Spencer Gifts*, 304 Kan. 755, 765, 374 P.3d 680 (2016). Legislative acquiescence can be, *but is not always*, indicative of legislative intent when the legislature chooses not to amend or modify a statute after judicial construction of the statute by our Supreme Court. See *State v. Quested*, 302 Kan. 262, 279, 352 P.3d 553 (2015). It is reasonable to assume that the doctrine of legislative acquiescence carries even less weight in attempting to ascertain legislative intent when a statute has been construed by an intermediate court of appeals rather than by our state Supreme Court.

12

In *Hernandez*, in addressing the issue before the court and deciding how to interpret the KSGA, this court stated, in part, that in construing a statute the intent of the legislature governs where that intent can be ascertained, "'even though words, phrases, or clauses at some place in the statute must be omitted or inserted.' [Citation omitted.]" 24 Kan. App. 2d at 287. But the Kansas Supreme Court has not invoked that rule of statutory construction for several years. Instead, in recent years, our Supreme Court has repeatedly emphasized that an appellate court should refrain from reading language into a statute that is not readily found therein. See, *e.g.*, *Barlow*, 303 Kan. at 813; *Keel*, 302 Kan. at 572; *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918-19, 349 P.3d 469 (2015).

K.S.A. 2015 Supp. 21-6811 provides no mechanism for determining whether an out-of-state conviction is a felony or a misdemeanor for criminal history purposes where the convicting jurisdiction does not differentiate between the two. Even when the pertinent parts of the KSGA are construed *in pari materia*, we cannot conclude, as this court did in *Hernandez*, that the legislature clearly intended for sentencing courts to look to the most comparable Kansas crime to determine whether an out-of-state conviction is a felony or a misdemeanor where the convicting jurisdiction does not make such a determination. We should refrain from inserting this remedy—or any other judicially constructed remedy—into the statute to fix an apparent flaw in the sentencing scheme. The wisest course is to defer to the legislature to fill this gap. See *Keel*, 302 Kan. at 573.

Based on the rules of statutory construction currently emphasized by the Kansas Supreme Court, we do not believe that our Supreme Court would embrace this court's rationale in *Hernandez* and *Lackey* in order to determine Horselooking's correct sentence. Instead, in a situation like this one where the convicting jurisdiction does not designate a prior conviction as a felony or a misdemeanor, we believe that our Supreme Court would apply the rule of lenity to determine Horselooking's criminal history. Under the rule of lenity, when a criminal statute is silent or ambiguous on a matter, the statute must be construed in favor of the accused. *Jordan*, 303 Kan. at 1019.

13

Accordingly, because K.S.A. 2015 Supp. 21-6811(e) is silent on whether to classify Horselooking's tribal conviction as a felony or a misdemeanor, then under the rule of lenity, the conviction must be classified as a misdemeanor. Horselooking claims that the rule of lenity requires that his tribal conviction cannot be scored in his criminal history. This claim is unpersuasive, however, because the KSGA clearly mandates that all out-of-state convictions—including tribal convictions—shall be included in a defendant's criminal history score. See K.S.A. 2015 Supp. 21-6811(e)(1); K.S.A. 2015 Supp. 21-6810(c).

Thus, the appropriate course of action under the rule of lenity is to classify the tribal conviction as a misdemeanor rather than a felony. Having determined that Horselooking's tribal conviction should be scored as a misdemeanor, the statute then directs the sentencing court to refer to the comparable Kansas offense to determine whether it is a class A, B, or C misdemeanor. K.S.A. 2015 Supp. 21-6811(e)(2)(B). If the comparable crime in the State of Kansas is a felony, then the out-of-state crime shall be classified as a class A misdemeanor. K.S.A. 2015 Supp. 21-6811(e)(2)(B).

As discussed above, the comparable Kansas crime is residential burglary. Under the version of the Kansas burglary statute in effect when Horselooking committed his crime of conviction, residential burglary is classified as a felony. K.S.A. 2015 Supp. 21-5807(c)(1)(A). Therefore, Horselooking's tribal conviction of residential burglary should be classified as a class A misdemeanor for criminal history purposes. K.S.A. 2015 Supp. 21-6811(e)(2)(B). Because the district court classified the tribal conviction as a felony rather than a class A misdemeanor, we vacate Horselooking's sentence and remand for the district court to resentence Horselooking using the correct criminal history score.

Before closing, we will briefly address the dissent's resolution of the issue presented in this case. Although the State concedes that if *Hernandez* and *Lackey* were wrongly decided, then Horselooking's burglary conviction should be scored as a

14

misdemeanor, the dissent asserts that the district court was right for the wrong reason in scoring the conviction as a felony. Relying on definitions from Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary, the dissent notes that felonies generically are "serious or major crimes" and misdemeanors, in turn, are "lesser or minor crimes." Slip op. at 17 (Atcheson, J., dissenting). The dissent goes on to discern that the Kickapoo Nation's codes governing substantive crimes and criminal procedure demonstrate that burglary is considered a serious or major crime by the tribe based primarily on the availability of banishment as a potential penalty. The dissent maintains that crimes in which banishment may be imposed as a penalty should be considered "the equivalent of felonies" in the Kickapoo Nation's criminal justice system. Slip op. at 24 (Atcheson, J., dissenting). Thus, the dissent concludes that the district court correctly scored Horselooking's tribal conviction as a felony for criminal history purposes.

This resolution is appealing because it is highly respectful to tribal legal traditions and it attempts to allow the Kickapoo Nation to determine whether Horselooking's tribal conviction would more likely be viewed by the tribe as a felony or a misdemeanor. But rather than relying on generic definitions of the terms "felony" and "misdemeanor," the Kansas criminal code provides precise definitions of these terms. A "felony" is defined as "a crime punishable by death or by imprisonment in any state correctional institution or a crime which is defined as a felony by law." K.S.A. 2015 Supp. 21-5102(a). "All other crimes [except for traffic infractions or cigarette or tobacco infractions] are misdemeanors." K.S.A. 2015 Supp. 21-5102(d). These definitions, of course, do not apply to how other jurisdictions define the terms.

K.S.A. 2015 Supp. 21-6811(e)(2)(A) explicitly states: "If a crime is a *felony* in another state, it will be counted as a felony in Kansas." (Emphasis added.) Our legislature chose to use the term "felony" in the statute. We cannot presume, as the dissent does, that the legislature intended this provision to simply mean that if a crime is a *serious or major crime* in another state, it will be counted as a felony in Kansas. As our Supreme Court has

15

repeatedly emphasized, in attempting to ascertain legislative intent, an appellate court should refrain from reading language into a statute that is not readily found therein. See *Barlow*, 303 Kan. at 813.

The dissent concludes that the Kickapoo Nation views burglary as a serious crime based on the availability of banishment as a punishment. However, we do not know whether other tribal codes draw this same distinction between serious crimes and minor crimes. We do not believe that a sentencing judge, in calculating a defendant's criminal history score, should be expected to review and interpret tribal codes and traditions in order to ascertain whether a tribal conviction is for a "serious or major crime" and thus is the "equivalent of a felony." Moreover, we cannot be certain that this solution is what our legislature has intended. The KSGA fails to explain how a sentencing court is to classify an out-of-state conviction as either a felony or a misdemeanor when the convicting jurisdiction does not designate the offense as either a felony or a misdemeanor. As our Supreme Court has instructed, in a situation like this one, the wisest course of action is to defer to the legislature to act to fix the problem. *Keel*, 302 Kan. at 573.

Vacated and remanded with directions.

\* \* \*

ATCHESON, J., dissenting: The issue here is how the Jackson County District Court should have considered Defendant Alvin P. Horselooking, Jr.'s, conviction for residential burglary in the Kickapoo Nation in determining his criminal history for sentencing on his crimes of conviction in this case. The majority frames a false issue and concludes that because the Kickapoo Nation's criminal code doesn't explicitly label crimes using the terms "felony" and "misdemeanor," the Kansas sentencing guidelines require Horselooking's burglary conviction be deemed a misdemeanor. I respectfully dissent. The Kickapoo Nation draws a clearly discernable distinction in its criminal code

16

and code of criminal procedure between serious crimes as a class and minor crimes as a class. And because residential burglary is a serious crime in the Kickapoo Nation, Horselooking's conviction should have been treated as a felony in determining his criminal history. The district court, therefore, was correct, albeit for a wholly incorrect reason.

The Kansas sentencing guidelines require criminal defendants' felony convictions be counted in determining their criminal histories. K.S.A. 2015 Supp. 21-6803(c) (defining "criminal history"). Out-of-state convictions are to be counted, and, by definition, those include convictions in tribal courts. K.S.A. 2015 Supp. 21-6811(e). Pertinent here, K.S.A. 2015 Supp. 21-6811(e)(2) provides that "[a]n out-of-state crime will be classified as either a felony or misdemeanor according to the convicting jurisdiction:  (A) If a crime is a felony in another state, it will be counted as a felony in Kansas [for criminal history purposes]." The terms "felony" and "misdemeanor" have recognized meanings within the law. Felonies generically are serious or major crimes. Black's Law Dictionary 736 (10th ed. 2014) (defining "felony" as "[a] serious crime" and "[a]lso termed major crime"). Misdemeanors, in turn, are lesser or minor crimes. Black's Law Dictionary 1150 (10th ed. 2014) (defining "misdemeanor" as "[a] crime that is less serious than a felony"). The common or lay meanings of the words basically match the legal definitions. Merriam-Webster's Collegiate Dictionary 460 (11th ed. 2004) (defining "felony" as "a grave crime"); Merriam-Webster's Collegiate Dictionary 793 (11th ed. 2004) (defining "misdemeanor" as "a crime less serious than a felony"). I have no reason to think the Kansas Legislature meant something different in using those words in the sentencing guidelines. *State v. Kendall*, 300 Kan. 515, 521, 331 P.3d 763 (2014) (words in statute should be given their ordinary meaning).

Accordingly, the legislature intended that a conviction for what another jurisdiction treats as a serious crime be scored as a felony for criminal history purposes, while a minor crime from that jurisdiction should be scored as a misdemeanor. If the

17

jurisdiction uses the terms felony and misdemeanor, those would control, as K.S.A. 2015 Supp. 21-6811(e) directs. Kansas, of course, explicitly designates crimes as felonies or misdemeanors.[*]

[*]I put to one side as a law school hypothetical a situation in which the foreign jurisdiction uses the terms "felony" and "misdemeanor" but defines them in an exceedingly eccentric way. I don't know if there is such a place, and we don't face that problem here.

The Kickapoo Nation codes do not classify crimes as felonies or misdemeanors. But as I discuss in more detail later, the types of punishment that may be imposed for various wrongs under the Kickapoo Nation criminal code create an obvious line of demarcation between those considered serious crimes and those considered to be lesser offenses. The serious crimes include banishment from the tribe for a term of years or for life as a potential punishment. Other offenses do not permit banishment. So when the majority frames the issue around the failure of the Kickapoo Nation's criminal law to "differentiate between felonies and misdemeanors," it really creates a false construct. Slip op. at 6. What the Kickapoo Nation's criminal law does not do is attach the label of felony or misdemeanor to particular crimes. But that law plainly and clearly does separate crimes in a binary way between serious and minor violations of the code. And that separation is what the Kansas Legislature requires for criminal history purposes in K.S.A. 2015 Supp. 21-6811(e) governing convictions from other jurisdictions.

Looked at narrowly, the majority, in effect, inserts a condition into K.S.A. 2015 Supp. 21-6811(e)(2)(A) and applies that subsection as if it read: "If a crime is *labeled or termed* a felony in another state, it will be counted as a felony in Kansas." The statute, however, neither says that nor imposes such a rote bureaucratic formality. Should another jurisdiction not use the terms felony and misdemeanor to classify crimes, a Kansas court weighing the effect of such a conviction for criminal history purposes may examine

18

whether that jurisdiction considers the crime a serious or major one—which is to say a felony without the label.

The seriousness of a crime generally may be measured by the potential punishment attached to it. Indeed, that is the common means of differentiating felonies from misdemeanors. See 1 LaFave, Substantive Criminal Law § 1.6 (2d ed. 2003). Historically, felonies have been punishable by a year or more in prison, and misdemeanors by a year or less in jail. 1 LaFave, Substantive Criminal Law § 1.6 (2d ed. 2003); see *State v. Dugan*, 47 Kan. App. 2d 582, 600-01, 276 P.3d 819 (2012); 18 U.S.C. § 3559(a) (2012) (felonies punishable by sentences in excess of 1 year; misdemeanors punishable by sentence of 1 year or less); *United States v. Other Medicine*, 596 F.3d 677, 682 (9th Cir. 2010). Felonies, *i.e.*, serious crimes, may also trigger civil disabilities that misdemeanors do not. See *Dugan*, 47 Kan. App. 2d at 600-01.

In short, another jurisdiction's failure to use the labels felony and misdemeanor to describe their codified crimes doesn't set off a systemic malfunction in K.S.A. 2015 Supp. 21-6811(e). A district court considering a conviction from such a jurisdiction for criminal history purposes may examine that jurisdiction's scheme of crimes and punishments to see if it imposes a classification distinguishing between serious crimes, on the one hand, and minor crimes, on the other. If the classes replicate a division comparable to the historical or common one between felonies and misdemeanors, then the district court should apply that scheme and treat the conviction accordingly for criminal history purposes. So missing labels alone do not require the district court to declare a default in scoring a conviction from another jurisdiction.

In some cases, an examination of the other jurisdiction's statutory scheme may yield no sufficiently clear result to say that a particular crime would be labeled a felony or a misdemeanor if that jurisdiction were to affix labels. As I will explain, we don't have that problem here. But in that event, a definitive characterization of the particular crime

19

as a felony or felony-like by that jurisdiction's highest court ought to be sufficient in the absence of legislative guidance. And at least some crimes—premediated murder and rape come to mind—may be sufficiently grave under any sensible designation that a conviction could be scored as a felony without an explicit declaration to that effect from the legislature or the courts of the convicting jurisdiction.

Were the law in the other jurisdiction truly inscrutable as to a particular crime, K.S.A. 2015 Supp. 21-6811(e) specifically and the Kansas sentencing guidelines generally appear to offer no guidance in classifying it for criminal history purposes. And, as an abstract proposition, I tend to agree with the majority that such a conviction ought to be scored as a misdemeanor. The rule of lenity would at least superficially seem to require as much. The Kansas court's effort to assess the conviction as being serious or minor would have come to an ambiguous conclusion, and the sentencing guidelines are silent on how to resolve that ambiguity. See *State v. Cheeks*, 302 Kan. 259, 260, 352 P.3d 551 (2015). Even then, the conviction shouldn't be discarded entirely—it would have to be either a serious crime (effectively a felony) or a minor crime (effectively a misdemeanor).

I also agree with the majority that *State v. Hernandez*, 24 Kan. App. 2d 285, Syl. ¶ 2, 944 P.2d 188, *rev. denied* 263 Kan. 888 (1997), and the reiteration of its holding in *State v. Lackey*, 45 Kan. App. 2d 257, 264-65, 246 P.3d 998, *rev. denied* 292 Kan. 968 (2011), impose a default rule that cannot be reconciled with the language of K.S.A. 2015 Supp. 21-6811 and the legislative intent for scoring convictions from other jurisdictions. If the convicting jurisdiction does not employ the labels felony and misdemeanor for its crimes, those decisions would revert to how Kansas labels its comparable crime. Although that rule generally supplies a result, the result has no connection to what the legislature described or intended in K.S.A. 2015 Supp. 21-6811(e)(2)(A). The legislature wanted the felony-misdemeanor determination for an out-of-state conviction to be based on that jurisdiction's classification or characterization of the crime. Nothing more, and

20

nothing less. So a default rule applying the Kansas classification for a comparable crime amounts to an unacceptable judicial rewrite of the statute. It is about as arbitrary a solution as choosing to rely on the classification of an equivalent common-law crime or a like crime in the Model Penal Code.

Ironically, the majority essentially invokes the misguided approach from *Hernandez* and *Lackey* in an attempt to undercut my plain reading of K.S.A. 2015 Supp. 21-6811(e)(2)(A). The majority cites the legislature's classification of and means for differentiating *Kansas* crimes as felonies, misdemeanors, traffic infractions, and cigarette or tobacco infractions, as set forth in K.S.A. 2015 Supp. 21-5102, and says that scheme should be applied to out-of-state convictions from jurisdictions that don't label their crimes as felonies or misdemeanors. But K.S.A. 2015 Supp. 21-6811(e)(2) clearly directs that out-of-state convictions are to be "classified . . . according to the convicting jurisdiction." While the panels in *Hernandez* and *Lackey* looked at how Kansas classified the specific crime comparable to an out-of-state conviction, the majority seems to contend a district court could simply move one step back and use the statutory method for classifying Kansas crimes to label the out-of-state conviction as felony or misdemeanor for criminal history purposes. But that approach also relies on the Kansas classifications as a default—the very reason the majority rejects *Hernandez* and *Lackey* as wrongly decided. In short, K.S.A. 2015 Supp. 21-5102 governs in sorting or classifying Kansas crimes, not those from other jurisdictions. See *State v. Boos*, 232 Kan. 864, ¶ 1, 659 P.2d 224 (1983) (In considering the version of K.S.A. 2015 Supp. 21-5102 predating the recodification of the criminal code effective in 2011, the court recognized: "In Kansas a crime is an act or omission defined by law and for which, upon conviction, a sentence of imprisonment or a fine, or both imprisonment and a fine, is authorized. K.S.A. 21-3105."); *State v. Kershner*, 15 Kan. App. 2d 17, 21-22, 801 P.2d 68 (1990) (applying K.S.A. 21-3105).

Moreover, the majority's suggestion would also seem to resolve the ambiguity it finds in K.S.A. 2015 Supp. 21-6811(e)(2)(A). I, therefore, don't see how the majority can simultaneously claim K.S.A. 2015 Supp. 21-6811(e)(2)(A) to be ambiguous and claim the classification scheme in K.S.A. 2015 Supp. 21-5102 renders my reading of K.S.A. 2015 Supp. 21-6811(e)(2)(A) erroneous. The two claims don't logically or legally reconcile easily.

Having outlined what I think is the proper approach to determining how a crime from another jurisdiction should be scored for criminal history purposes when that jurisdiction doesn't use the terms felony and misdemeanor, I now perform that exercise for Horselooking's conviction for residential burglary under the Kickapoo Nation's criminal code. At the outset, the exercise necessarily requires a wide perspective.

The Kickapoo Nation's overarching philosophy of criminal justice differs significantly from those systems, including Kansas', with antecedents in English common-law and Anglo-Saxon jurisprudence. With respect to punishment, Kansas identifies four primary policy objectives: deterrence, incapacitation, retribution, and rehabilitation. See *State v. Mossman*, 294 Kan. 901, 911, 281 P.3d 153 (2012). Those objectives similarly inform punishment in the federal criminal process and in states across the country. See *Graham v. Florida*, 560 U.S. 48, 71, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). In marked contrast, the Kickapoo Nation has an explicit policy that criminal sentences should "strive toward restitution and reconciliation of the offender and the victim and Tribe." Kickapoo Nation Tribal Code, Title 11, Criminal Procedure § 403. And "the paramount goal" of the criminal justice process includes "restor[ing] the offender to harmony with" the victim and the Tribe. Kickapoo Nation Tribal Code, Title 11, Criminal Procedure § 403. To that end, sentences typically include restitution to the victim and, when appropriate, to the Tribe. A convicted defendant may receive a mitigated sentence if he or she "recognizes the wrong he [or she] has committed[] and

22

earnestly repents of such wrong." Kickapoo Nation Tribal Code, Title 11, Criminal Procedure § 403(b).

Even more striking, perhaps, are the punitive sanctions that may be imposed under the Kickapoo Nation's criminal code. Many offenses carry sentences of no more than 3 months' incarceration in the Tribal jail. Even the most serious crimes, including murder, call for incarceration for no more than 6 months. See Kickapoo Nation Tribal Code, Title 10, Criminal Offenses § 211 (homicide in the first degree). Horselooking's burglary conviction was punishable by incarceration for 3 to 6 months in jail. Kickapoo Nation Tribal Code, Title 10, Criminal Offenses § 110.

As I indicated earlier, some crimes permit banishment as an additional punishment; others do not. Banishment has no direct analog in the Kansas sentencing scheme.

As the name suggests, banishment cuts convicted defendants off from the Tribe and treats them as if they were dead during the prescribed period. Kickapoo Nation Tribal Code, Title 11, Criminal Procedure § 404. Banishment reflects a traditional punishment in the Kickapoo Nation and other tribes. Kickapoo Nation Tribal Code, Title 11, Criminal Procedure § 404(a); Atwood, *Tribal Jurisprudence and Cultural Meanings of the Family*, 79 Neb. L. Rev. 577, 585-86 & n.31 (2000). Historically, banishment was an especially harsh punishment—the person banished had to survive in an inhospitable and often dangerous environment without the protection of the Tribe or any other organized community. Although banishment still results in actual consequences, those consequences no longer include a challenge to physical survival. Banishment, however, remains sufficiently stigmatizing that a prosecutor must make an election early in a given case to recommend it as a punishment, triggering additional procedural protections for the accused. See Kickapoo Nation Tribal Code, Title 11, Criminal Procedure §§ 303(n), 304(b).

23

Again, by way of example, murder permits banishment for not less than 10 years nor more than life. Kickapoo Nation Tribal Code, Title 10, Criminal Offenses § 211. A person convicted of burglary may be banished for not less than 5 years nor more than 10 years. Kickapoo Nation Tribal Code, Title 10, Criminal Offenses § 110. The record in this case does not indicate whether Horselooking was, in fact, banished, but imposition of the penalty in a given case has no bearing on how the crime should be classified, a determination properly based on potential punishment.

A review of the Kickapoo Nation codes governing substantive crimes and criminal procedure demonstrates that burglary is considered a serious or major crime based on the comparatively longer period of incarceration and the availability of banishment as a penalty. Banishment marks the class or group of crimes in which it may be imposed as significantly worse than the corresponding class or group in which it cannot. Accordingly, the former group should be considered the equivalent of felonies in the Kickapoo Nation's criminal justice system. In turn, Horselooking's conviction for residential burglary in that system should be treated as a felony for criminal history purposes under K.S.A. 2015 Supp. 21-6811(e). I would, therefore, affirm the district court's ultimate determination of Horselooking's criminal history.