(625 P.2d 1)
No. 51,649

STATE OF KANSAS, *Plaintiff-Appellee,* v. TIM SMALL, *Defendant-Appellant.*

Petition for review denied April 29, 1981.

Opinion filed March 13, 1981.

*Dennis D. Webb,* of Hess, Leslie & Berkley, of Hutchinson, for the appellant.

*Joseph L. McCarville, III,* assistant county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., REES and PARKS, JJ.

FOTH, C.J.: Tim Small appeals from his conviction by a jury of conspiracy to steal over $100 worth of merchandise from an Alco department store in Hutchinson, Kansas. He challenges the sufficiency of the evidence and the admission of certain exhibits.

Participants in the conspiracy were alleged to be the defendant, his friend Michael Franklin, and Michael's girl friend Trudy Ahrens, a cashier at the Alco store. Participating in the events but not alleged to be a conspirator was defendant's girl friend, Pam Curtiss. The State's theory was that over a three-week period ending in mid-January, 1979, defendant, Pam, and Michael on numerous occasions checked large amounts of merchandise through Trudy's checkout register while Trudy by prearrangement rang up and charged either nothing or only token amounts.

Taking the evidence in the light most favorable to the State, as we must when its sufficiency is challenged, it showed the following: three or four times a week over a three-week period defendant, Pam, and Michael arrived at the store together in a truck belonging to the joint employer of defendant and Michael. Once in the store Michael would go his way, defendant and Pam theirs, although they would occasionally meet and converse. When Michael had a cart full of merchandise he would check out through Trudy's counter. She operated the cash register as though ringing up sales, but in most cases pushed a "transfer" button which merely moved the register tape without recording figures. Trudy would sack the merchandise and either no money or a minimal amount of money would be paid.

Defendant and Pam followed the same procedure. Two of Trudy's fellow employees detailed two occasions when defendant and Pam checked two or three bags of merchandise through Trudy's counter and no money changed hands. On one of those occasions they checked the tape in the cash register just after defendant and Pam checked through and Trudy went off duty. They found nothing but zeros, and took the tape to the store's management.

A search of Michael's apartment produced a quantity of clothing, blankets, tools, appliances and cigarettes identified as coming from the Alco store, some still bearing Alco price tags. Some thirty-three of these items, having a value of over $400, were introduced as exhibits.

The claim of insufficiency of evidence is based largely on discrepancies between Trudy's testimony at trial and her admis-

sions when first confronted with the thefts. When first interrogated by a security officer for Alco she admitted her part of the scheme, saying she had passed merchandise to all three of the other participants at the request of each. She also "guessed" the total amount taken to be worth about $1,000. The officer's account of this conversation was admitted without objection.

Trudy pleaded guilty to felony theft for her part in the transaction and appeared in this trial as an obviously reluctant witness for the prosecution. She readily admitted an agreement with her boyfriend Michael to permit him to take merchandise without paying. As to defendant and Pam, however, she didn't remember any conversations with them. She did see them come in with Michael and then separate from him. Asked why she permitted defendant and Pam to walk out with merchandise with only token or no payment, she said, "Well, I thought that that's why they came, too. I just took it for granted that they were, they came in together."

Defendant took the stand in his own behalf. He denied any arrangement with Michael or with Trudy. He testified that he purchased items, checked them out, and paid for them, and didn't realize he was being undercharged.

Defendant's argument is that there was no evidence of any express agreement between him and his alleged coconspirators and in the absence of such an agreement he could not be guilty of conspiracy. Putting aside Trudy's first statement showing an express agreement, the argument still is without merit.

The elements of the crime of conspiracy were considered in *State v. Daugherty*, 221 Kan. 612, Syl. ¶ 4, 562 P.2d 42 (1977):

"Conspiracy as defined by K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy."

Thus, there must be an agreement. But such an agreement need be no more than a meeting of the minds and need not be written or oral. Further, its existence may be shown by circumstantial evidence. The Oklahoma court long ago approved classic textbook law in *Democrat Printing Co. v. Johnson*, 71 Okla. 128, 129, 175 Pac. 737 (1918), quoting 5 Ruling Case Law, § 37, p. 1088:

" 'Conspiracies need not be established by direct evidence of the acts charged, but may and generally must be proved by a number of indefinite acts, conditions,

and circumstances which vary according to the purposes to be accomplished. The very existence of a conspiracy is generally a matter of inference, deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful purpose in common between them. The existence of the agreement or joint assent of the minds need not be proved directly. It may be inferred by the jury from other facts proved. *It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same, so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object.'* " (Emphasis added.)

Accord, *State ex rel. Elsey v. Silverthorn,* 195 Okla. 696, 161 P.2d 858 (1945).

In the criminal law context, the same concept was more succinctly stated in *Silbert v. State,* 12 Md. App. 516, 528, 280 A.2d 55 (1971):

"[T]o establish a conspiracy, it is not necessary that there be any formal agreement manifested by formal words, written or spoken; it is enough if the parties tacitly come to an understanding in regard to the unlawful purpose and this may be inferred from sufficiently significant circumstances."

Accord, *McMorris v. State,* 26 Md. App. 660, 663-64, 338 A.2d 912 (1975), *aff'd* 277 Md. 62, 355 A.2d 438 (1976); *Quaglione v. State,* 15 Md. App. 571, 578-79, 292 A.2d 785 (1972).

The question before us is whether the jury could have reasonably inferred at least a tacit agreement between defendant and Trudy that defendant should be able to check out merchandise without paying for it. From the evidence outlined above we think such an inference was virtually inevitable. It strains credulity to suggest that defendant repeatedly took merchandise through a store checkout stand without paying for it in the absence of some sort of prearrangement. But even if no prearrangement existed, defendant and Trudy "pursued by their acts the same object . . . one performing one part and another another part of the same, so as to complete it." *Democrat Printing Co. v. Johnson,* 71 Okla. at 129. That was enough to constitute a conspiracy between them.

There was also the further inference to be drawn from the State's evidence that defendant embarked on his course of conduct as a result of discussions with Michael, a conceded coconspirator with Trudy. Defendant regularly arrived with Michael and was observed conferring with him while in the store. Even if

defendant's agreement was not directly with Trudy, it was surely with Michael, and with Trudy through him.

Defendant relies on *Robertson v. State,* 231 Ind. 368, 108 N.E.2d 711 (1952). In that case, defendant was charged with conspiring to steal a safe. The evidence showed he was acquainted with two men who stole the safe, and they used his truck; beyond that, there was mere suspicion. In holding the evidence insufficient the court applied established Indiana law:

" 'In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy.' [*Coughlin v. State,* 228 Ind. 393, 395, 92 N.E.2d 718 (1950).]

"The existence of the agreement need not be proved directly but may be inferred from other facts proved. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to establish his guilt." 231 Ind. at 370.

We have no quarrel with the holding of that case, or with the rule of law applied. We are applying it here, where there is direct evidence of defendant's participation in a scheme resulting in theft, from which an agreement could readily be inferred.

He also relies on *United States v. Falcone,* 311 U.S. 205, 85 L.Ed. 128, 61 S.Ct. 204 (1940), where a mere seller of goods was held not to be a conspirator with those who used the goods in an illegal distilling operation, even though he knew the illegal purpose of his purchasers. In *State v. Daugherty,* 221 Kan. at 620-21, *Falcone* is discussed and distinguished from a case where the defendant is an active participant in the illegal activity. The same distinction is applicable here.

There was ample evidence to justify a finding of conspiracy between defendant, Trudy, and Michael.

Defendant's other point goes to the admissibility and probative value of the merchandise recovered from Michael's apartment. He argues first that it was not connected with him. Second, he points out that while the $400-plus value of the merchandise was shown, it was also shown that some of it was at least partially paid for, making it impossible to identify any particular object as stolen.

As to the first argument, the acts or declarations of one conspirator in furtherance of the crime are admissible against any other conspirator. *State v. Borserine,* 184 Kan. 405, Syl. ¶ 5, 337 P.2d 697 (1959). See also *State v. Campbell,* 210 Kan. 265, 500 P.2d 21 (1972). Once a conspiracy to steal is established, property stolen in the course of the conspiracy is admissible against any of the conspirators regardless of where found. The evidentiary link with defendant here was through the conspiracy.

The second argument is answered by the nature of the conspiracy charged. Conspiracy is a felony if its objective is to commit a felony. K.S.A. 21-3302(3). The objective of this conspiracy was alleged to be the theft of property having a value of over $100, *i.e.,* felony theft. To prove this charge, it was not necessary to prove that over $100 worth of property—or any property at all—was actually stolen, but only that a theft of that magnitude was intended by the conspirators and they took some overt act toward accomplishing it. The quantity of merchandise recovered, even though partially paid for, tended to show the scope of the conspiracy's objective and to support the jury's conclusion that the conspirators' sights were aimed higher than $100.

We conclude the merchandise recovered from Michael's apartment was properly admitted against defendant and supported the verdict finding the intended theft to be a felony.

Affirmed.