(944 P.2d 188)

No. 75,461

STATE OF KANSAS, *Appellee*, v. RAFAEL HERNANDEZ, *Appellant*.

Opinion filed August 29, 1997.

*Randall L. Hodgkinson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Edmond D. Brancart*, assistant county attorney, *E. Leigh Hood*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, P.J., WAHL, S.J., and RICHARD M. SMITH, District Judge assigned.

SMITH, J.: The defendant, Rafael Hernandez, appeals his convictions of sale of marijuana, conspiracy to sell marijuana, and no drug tax stamp. We affirm in part and remand the cause to the district court for resentencing.

A jury convicted the defendant of offering to sell marijuana, conspiracy to sell marijuana, and no drug tax stamp. Defendant's convictions stemmed from an undercover marijuana buy which occurred in Dodge City, Kansas. The State's primary witness was Officer Ray Riniker, an undercover police officer from the Wichita Police Department. Officer Riniker had telephone contact with defendant and Pedro Rivera on several occasions, arranging a purchase of controlled substances. Defendant made arrangements with Riniker over the telephone for a meeting at which defendant and Rivera would deliver marijuana to Dodge City. These telephone contacts were initiated through a confidential informant. Both Rivera and defendant were communicating with Officer Riniker from Truth or Consequences, New Mexico.

Officer Riniker and another undercover officer met defendant and Rivera at a restaurant in Dodge City. Eventually, several kinds of drugs and possible transactions were discussed. Later, the four men went to a motel room where defendant and Rivera produced seven packages of plastic-wrapped marijuana. Defendant told Officer Riniker to open one of the packages and see how he liked the marijuana. Once the details of the buy were agreed upon, Officer Riniker signaled the surveillance officers to come in and arrest defendant and Rivera.

At sentencing, the State moved for an upward durational departure, which the trial court granted. Defendant was sentenced to 59 months' imprisonment on the offer to sell marijuana conviction, 52 months' imprisonment on the conspiracy to sell marijuana conviction, and 7 months' imprisonment on the no drug tax stamp conviction. The two marijuana sentences were ordered to run consecutively and the tax stamp sentence was ordered to run concurrently.

## MILITARY CONVICTIONS

Defendant's criminal history includes three military convictions. In 1983, he was convicted of one count of wrongful distribution of methamphetamine and two counts of wrongful distribution of marijuana. The trial court found in the present case that these convictions should be counted as three previous felony convictions for

criminal history purposes. Defendant argues the Kansas Sentencing Guidelines Act (KSGA) is silent as to how military convictions are to be scored; therefore, they must be scored as misdemeanors.

K.S.A. 21-4711(e) requires the sentencing court to include military convictions in criminal history: "Convictions or adjudications occurring within the federal system, or other state systems, the District of Columbia, foreign, tribal or military courts are considered out-of-state convictions or adjudications."

In determining criminal history, the sentencing court looks to the state in which the conviction occurred to determine if the crime is classified as a felony or misdemeanor. The court looks to the most comparable Kansas offense to determine whether the conviction is classified as a person or nonperson crime. K.S.A. 21-4711(e). This issue arises from the fact that military convictions are not designated as either felony or misdemeanor. See Uniform Code of Military Justice, 10 U.S.C. §§ 877-934 (1994).

The KSGA does not provide how to classify prior convictions when the convicting jurisdiction does not classify the crime as either felony or misdemeanor. How to so classify represents a question of first impression for this court.

The applicable rules of statutory construction are well settled:

"The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases, or clauses at some place in the statute must be omitted or inserted."

"In determining legislative intent, courts are not limited to a mere consideration of the language used but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested."

"In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part of parts of an act but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the literal import of words or phrases which conflict with the manifest purpose of the legislature." *State v. Gonzales*, 255 Kan. 243, Syl. ¶¶ 2, 3, and 4, 874 P.2d 612 (1994).

While criminal statutes are generally strictly construed against the State, this principle is subordinate to the rule that judicial interpretations must be reasonable and sensible to effectuate the legislative design and true intent of the legislature. *State v. Schlein*, 253 Kan. 205, Syl. ¶ 2, 854 P.2d 296 (1993). The legislature is presumed to intend that a statute be construed reasonably so as to avoid absurd or unreasonable results. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

Defendant argues that criminal statutes must be strictly construed and because the legislature provided no specific guidance when the convicting jurisdiction does not classify crimes as either misdemeanor or felony, the crime must then be scored as a misdemeanor. Under such analysis a conviction for murder, rape, or a similar crime would be scored as a misdemeanor.

A similar problem interpreting the KSGA was addressed in *State v. Fifer*, 20 Kan. App. 2d 12, 881 P.2d 589, *rev. denied* 256 Kan. 996 (1994). *Fifer* addressed the legislature's failure to specifically address how to classify "attempts" as either person or nonperson crimes. This court discussed the philosophy of the KSGA and reached a result based upon the obvious intent of the legislature and a desire to avoid a clearly unreasonable result. 20 Kan. App. 2d at 15-16.

We conclude that the rationale applied in *Fifer* is equally applicable here. The legislature knows that under general principles of criminal jurisprudence, states generally divide the seriousness of crimes into two basic categories, felonies and misdemeanors. It is equally clear that the two most important factors for the court to consider in determining a sentence under the KSGA is the criminal history of the defendant and the severity of the crime committed. The specific intent of the legislature is that all prior adult felony convictions, including expungements, be considered and scored in determining a defendant's criminal history. See K.S.A. 21-4710(d)(2).

We conclude the legislature intended the sentencing court to compare a prior conviction to the most comparable Kansas offense to make a felony or misdemeanor determination when such conviction occurred in a jurisdiction that does not distinguish between

felonies and misdemeanors. We are convinced such intent is clear when the pertinent parts of the KSGA are construed *in pari materia*. For us to conclude otherwise would effect an unreasonable result at odds with the legislature's manifest intent.

## THE DEPARTURE SENTENCE

Defendant contends the upward durational departure sentence imposed here was not justified by the evidence in the record. The role of this court in reviewing this issue was set forth in *State v. Richardson*, 20 Kan. App. 2d 932, Syl. ¶ 1, 901 P.2d 1 (1995):

"In an appeal from a departure sentence an appellate court must determine pursuant to K.S.A. [1994] Supp. 21-4721(d) whether the sentencing court's findings of fact and reasons justifying departure (1) are supported by substantial competent evidence and (2) constitute substantial and compelling reasons for departure as a matter of law."

Here, the departure was granted on a motion of the State alleging defendant's crimes were part of a major organized drug manufacturing, production, cultivation, or delivery activity contrary to K.S.A. 21-4717(a), which provides in relevant part:

"The following aggravating factors, which apply to drug crimes committed on or after July 1, 1993, under the sentencing guidelines system, may be considered in determining whether substantial and compelling reasons for departure exist:

"(1) The crime was committed as part of a major organized drug manufacture, production, cultivation or delivery activity. Two or more of the following nonexclusive factors constitute evidence of major organized drug manufacture, production, cultivation or delivery activity:

. . . .

(D) The presence of manufacturing or distribution materials such as, but not limited to, drug recipes, precursor chemicals, laboratory equipment, lighting, irrigation systems, ventilation, power-generation, scales or *packing material*.

. . . .

(F) Possession of *large amounts* of illegal drugs or *substantial quantities* of controlled substances.

(G) A showing that the offender has engaged in *repeated criminal acts associated with the manufacture, production, cultivation or delivery of controlled substances*." (Emphasis supplied).

Because the sentencing court relied on aggravating factors specifically set out in the KSGA, such factors are substantial and compelling as a matter of law. Further, there is substantial competent

evidence supporting each of the three aggravating factors upon which the court relied. The court based its finding related to the packaging materials on the fact that the marijuana was carefully wrapped in layers of plastic and taped to prevent a drug-sniffing dog from detecting the presence of marijuana in the packages. Regarding the large amount factor, the court found that seven bricks of marijuana which weighed approximately 8.36 pounds was a large amount. Finally, the trial court found that defendant's history of drug convictions during his military service illustrated his repeated involvement with controlled substances. We are convinced the findings of fact and reasons justifying defendant's departure sentence were supported by substantial competent evidence and were reasons that constitute a substantial compelling reason for imposing a departure sentence.

## THE NONBASE SENTENCE AND POSTRELEASE SUPERVISION PERIOD

Defendant raises two additional issues concerning the sentence imposed by the trial court. First, defendant contends the trial court erred in its calculation of the departure sentence as to the nonbase conspiracy conviction. Secondly, defendant contends the trial court erred in setting the postrelease supervision at 36 months.

Under K.S.A. 21-4720(b)(5), when the trial court imposes sentence for multiple crimes, the court must establish a base sentence for the primary crime using the full criminal history score. The primary crime is generally the crime with the highest severity level. The remaining crimes are scored using a criminal history score of I.

Under the facts presented, defendant's conviction of offering to sell marijuana is the primary crime, and defendant's full criminal history score is applied to that crime to establish the base sentence. Thus, the conspiracy conviction, a severity level 3 offense, is scored using a criminal history score of I. Under K.S.A. 21-3302(d), K.S.A. 1994 Supp. 65-4163(3), and K.S.A. 21-4705, the presumptive sentence for the conspiracy conviction is anywhere from 8 to 10 months. Pursuant to K.S.A. 21-4719(b)(2), the maximum upward durational departure can be no more than double the presumptive sentence, which here would be 20 months. Thus, it was error for

the sentencing court to impose a departure sentence of 52 months on the conspiracy conviction.

Defendant further contends the trial court erred in calculating his postrelease supervision period. Without comment, the court imposed a 36-month postrelease supervision period when K.S.A. 1994 Supp. 22-3717(d)(1)(A) provides for a 24-month postrelease supervision period. The 1995 amendment to 22-3717, which prescribed a presumptive 36-month postrelease supervision period, did not become effective until April 20, 1995.

Although the defendant's period of postrelease supervision may have been the subject of a departure, the record is silent as to whether the court intended to apply a departure analysis in establishing the postrelease period. Because reversal of the sentence on the conspiracy conviction requires that the cause be remanded to the trial court for resentencing, the postrelease supervision period should be revisited in accordance with this opinion.

## SUFFICIENCY OF EVIDENCE

Defendant complains the evidence presented at trial was insufficient to support a conviction of conspiracy to sell marijuana. When sufficiency of the evidence to sustain a conviction is questioned, this court reviews all the evidence, viewed in a light most favorable to the prosecution, to determine if a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Knighten*, 260 Kan. 47, Syl. ¶ 1, 917 P.2d 1324 (1996).

"To establish a conspiracy it is not necessary that there be any formal agreement manifested by formal words, written or spoken; it is enough if the parties tacitly come to an understanding in regard to the unlawful purpose and this may be inferred from sufficiently significant circumstances." *State v. Small*, 5 Kan. App. 2d 760, Syl. ¶ 2, 625 P.2d 1, *rev. denied* 229 Kan. 671 (1981).

Further, "while an agreement is a necessary element of a conspiracy, the existence of the agreement does not need to be proved directly but may be inferred from other facts proved." 5 Kan. App. 2d 760, Syl. ¶ 3.

· Here, the evidence showed that on different occasions, both the defendant and Rivera called Officer Riniker to discuss and make arrangements for the marijuana sale. Defendant and Rivera re-

ferred to each other during these telephone conversations. Defendant and Rivera drove together from New Mexico to Dodge City, produced the marijuana from the car they drove together, and jointly presented the marijuana to the undercover officers. There is sufficient evidence in this record to support the defendant's conspiracy conviction.

## MULTIPLICITOUS CHARGES

This court's standard of review on questions of multiplicity is plenary. *State v. Perry*, 16 Kan. App. 2d 150, 151, 823 P.2d 804 (1991).

"The test to determine whether the charges in a complaint or information are multiplicitous is whether one offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." *State v. Utterback*, 256 Kan. 340, Syl. ¶ 2, 886 P.2d 808 (1994). The conspiracy to sell marijuana charge required proof of an agreement between defendant and Rivera to sell the marijuana. Proof of that agreement was not a required element of the offer to sell marijuana charge; therefore, the charges are not multiplicitous.

## PROSECUTIONAL MISCONDUCT

During closing arguments the prosecutor made the following statement:

"It is absolutely correct that the Defendant does not have to testify. The Defendant does not have to put on any case at all. When we walked in, I bore the burden of proof to you. And if I can't prove it, she's right, he's not guilty. But once the Defendant elects to make a defense and put on a defense, you get to evaluate it just as critically as you evaluate mine. It's not a one-sided deal. Everybody has choices and with those choices come responsibilities."

Defendant objected, claiming this argument shifted the burden of proof from the State to the defendant. The trial court overruled the objection. Defendant now argues this statement constitutes an improper remark requiring reversal of his convictions.

"The prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against

the defendant and to deny the defendant a fair trial." *State v. Eastbridge*, 20 Kan. App. 2d 973, Syl. ¶ 3, 894 P.2d 243 (1995).

The prosecutor's remarks related to the jury's evaluation of defendant's evidence, not a statement that the burden of proof had changed. While such argument may be improper, it was not so gross or flagrant as to prejudice the jury against defendant and to deny him a fair trial.

Affirmed in part, reversed in part, and remanded to the district court for resentencing consistent with this opinion.