NOT DESIGNATED FOR PUBLICATION

Nos. 116,386
116,653

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KILEY ANN GUENTHER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed May 4, 2018. Affirmed in part, sentences vacated, and remanded with directions.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM:  Kiley Ann Guenther appeals from a judgment of the trial court revoking her probation in two cases—Wyandotte County case Nos. 14 CR 0535 and 14 CR 1157. She argues that her conduct on probation merited imposition of intermediate sanctions instead of imposition of her underlying sentences. We acknowledge that a trial court is statutorily required to consider the use of a lesser sanction before revoking a defendant's probation. Nevertheless, we conclude that this statutory requirement was not warranted under the facts or law of this case. Guenther also argues that the trial court

1

erred in calculating her criminal history score by classifying her two previous Missouri municipal ordinance violations as A or B person misdemeanors. Because we find merit in this argument, we vacate her sentences and remand to the trial court with directions to resentence Guenther without consideration of her two Missouri municipal ordinance violations. Accordingly, we affirm in part, vacate sentences, and remand for resentencing.

On July 1, 2014, Guenther pled guilty to one count of possession of methamphetamine in Wyandotte County case No. 14 CR 0535. The trial court sentenced Guenther to 18 months' probation with an underlying sentence of 28 months' imprisonment followed by 12 months' postrelease supervision. The trial court ordered that Guenther's probation term with community corrections consist of drug treatment, which could last her entire term of probation.

On November 26, 2014, police arrested Guenther for possessing methamphetamine. The State then charged Guenther with one count of possession of methamphetamine in Wyandotte County case No. 14 CR 1157. Guenther's arrest and charge in 14 CR 1157 resulted in the State moving to revoke her probation in 14 CR 0535. In addition to alleging that Guenther had violated her probation by committing a new law violation, the State alleged that her probation should be revoked in 14 CR 0535 because she had failed to complete her mandatory substance abuse treatment program.

On May 15, 2015, Guenther pled guilty to the single count of possession of methamphetamine in 14 CR 1157.

On July 17, 2015, the trial court held a joint probation violation hearing for 14 CR 0535 and a sentencing hearing for 14 CR 1157. At the beginning of the hearing, Guenther's attorney told the trial court that he had arranged for Guenther to be transferred to drug court should the court grant Guenther's request to remain on probation in 14 CR 0535 and be sentenced to probation in 14 CR 1157. Based upon her ability to be

transferred to drug court, the trial court ordered that Guenther's probation in 14 CR 0535 not be revoked despite her new law violation in 14 CR 1157. For 14 CR 1157, the trial court sentenced Guenther, whose presumptive sentence was now imprisonment, to 12 months' probation with an underlying sentence of 30 months' imprisonment followed by 12 months' postrelease supervision. The trial court consecutively ran Guenther's sentence in 14 CR 1157 to her sentence in 14 CR 0535. A condition of Guenther's probation in both 14 CR 0535 and 14 CR 1157 was "no consumption of alcohol."

On December 2, 2015, Missouri police arrested Guenther for driving while under the influence, careless driving, failure to yield to an emergency vehicle, and leaving the scene of an accident. After she was transferred to the Wyandotte County jail, Guenther had a drug court hearing where she was ordered to complete inpatient treatment at the jail. Guenther completed the inpatient treatment on January 18, 2016. But in March 2016, Guenther tested positive for methamphetamine in her system; she also missed multiple drug court meetings. Guenther then had another drug court hearing where the trial court ordered that Guenther serve 60 days of shock time before resuming her probation.

On June 2, 2016, the State moved to revoke Guenther's probation in 14 CR 0535 and 14 CR 1157. In its motion, the State alleged that Guenther had admitted to drinking alcohol after she tested positive for alcohol in her system on May 17, 2016.

On June 3, 2016, the trial court held a probation violation hearing for both Guenther's 14 CR 0535 and 14 CR 1157 cases. At the hearing, Guenther stipulated to the fact that she had consumed alcohol, which resulted in her positive test on May 17, 2016. Following this stipulation, the State requested that the trial court revoke Guenther's probation in both 14 CR 0535 and 14 CR 1157 because (1) Guenther had "been given multiple opportunities to try to get clean" and (2) Guenther had "pick[ed] up a new DUI, and . . . she [was] still drinking." The State argued this established that Guenther was not benefiting from probation and she was posing a safety risk to the community. Guenther

3

argued that the trial court should impose an intermediate sanction because "consumption of some indiscernible amount of alcohol does not constitute a public safety violation." At this point, the State noted that Guenther had admitted to consuming "at least a half a pint of alcohol" on May 15, 2016, an amount that was still present in her body two days later during urinalysis testing on May 17, 2016.

In the end, the trial court revoked Guenther's probation in both 14 CR 0535 and 14 CR 1157. Citing K.S.A. 2017 Supp. 22-3716(c)(9)(A), the trial court made the following findings:

> "[T]he safety of the community is compromised anytime a person who has an alcohol and drug problem is continuing to use alcohol or drugs. . . [M]ore specifically that the Court's main concern is the welfare of Miss Guenther herself. She has continually placed herself back in a position where not only is it possible that harm could come to others, but more particularly, harm could come to her.
>
> "Specifically the Court finds that the ingestion of the alcohol by Miss Guenther could have created [a] serious risk to her . . ."

The trial court then ordered that Guenther serve her original underlying consecutive sentences in 14 CR 0535 and 14 CR 1157.

For both her 14 CR 0535 and 14 CR 1157 sentences, the trial court determined that Guenther had a criminal history score of C based upon aggregating three previous municipal ordinance violations. The three previous municipal ordinance violations were as follows:  a Kansas City, Kansas, municipal assault on a law enforcement officer violation, a Lee's Summit, Missouri, municipal domestic assault violation, and a Kansas City, Missouri, municipal endangering the welfare of a child violation.

4

*Did the Trial Court Err by Revoking Guenther's Probation?*

Under K.S.A. 2017 Supp. 22-3716(c)(9)(A), a trial court may revoke a defendant's probation without ever imposing an intermediate sanction if the court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction."

Appellate courts review a trial court's decision to revoke a defendant's probation for an abuse of discretion. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). Courts abuse their discretion if their decisions are based upon errors of law, errors of fact, or otherwise arbitrary reasons. 52 Kan. App. 2d at 782.

On appeal, Guenther does not challenge the trial court's determinations that she posed a safety risk to the public or herself as it concerns the particularity of those findings. Indeed, she does not even contest that she posed a public safety risk or a risk to herself. Instead, Guenther's sole argument is that "her willingness to seek treatment, her commitment to being successful on probation, and the relatively harmless nature of her violation—which was the mere consumption of alcohol, a legal substance—outweighed *any rationale* for revoking her probation and imposing the full underlying prison sentences." (Emphasis added.) Nevertheless, Guenther's conduct on probation clearly establishes her unwillingness to acknowledge the counter evidence in this case.

Here, Guenther, who was already on probation for her possession of methamphetamine conviction in 14 CR 0535, was given a second chance at the privilege of probation when the trial court decided not to revoke her probation in 14 CR 0535 and to grant her departure request for probation in 14 CR 1157. Despite the court not only approving a second chance at probation *and* freedom but also approving an opportunity to participate in Wyandotte County's drug court, Guenther violated her probation three

5

more times in the following ways: (1) when she was arrested for DUI, careless driving, failure to yield to an emergency vehicle, and leaving the scene of an accident in December 2015; (2) when she tested positive for methamphetamine in March 2015; and (3) when she tested positive for alcohol in May 2016.

Simply put, Guenther's conduct on probation does not support that she had a willingness to seek treatment or a commitment to probation. Moreover, Guenther's contention that violating her probation by consuming alcohol was "relatively harmless" accentuates her failure to grasp the severity of her addiction. As emphasized by the State at the probation violation hearing, Guenther had "pick[ed] up a new DUI [while on probation]" and continued to drink. Further, it is undisputed that Guenther started consuming alcohol immediately upon her release from jail following the completion of her 60-day shock time sanction.

Consequently, Guenther's arguments that her conduct merited the imposition of an intermediate sanction runs counter to reason. In fact, her conduct on probation fully establishes the reasonableness of the trial court's decision to revoke her probation. As found by the trial court, Guenther's welfare would not be served by a sanction and continued probation because history proved that after completing her sanction, Guenther would continue to harm herself as well as violate her probation by consuming alcohol and drugs.

Because Guenther has limited her argument to the unreasonableness of the trial court's decision to revoke her probation in 14 CR 0535 and 14 CR 1157 based on her amenability to probation and the insignificance of her final violation, she has abandoned any other argument she may have had regarding the revocation of her probation. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding an issue not briefed is abandoned). As a result, we affirm the trial court's revocation of Guenther's probation in both 14 CR 0535 and 14 CR 1157.

6

*Did the Trial Court Err When It Calculated Guenther's Criminal History?*

On appeal, Guenther makes three arguments why the trial court erred in calculating her sentences. All three of Guenther's arguments involve her Missouri ordinance violations and a Kansas municipal ordinance violation which the trial court used to elevate them to a single person felony for criminal history purposes.

First, Guenther argues that the trial court erred by classifying her prior Missouri ordinance violations as either class A or B misdemeanors because the criminal history classification statute in effect when she committed her crimes did not provide a means for classifying out-of-state misdemeanors as either class A or class B person misdemeanors. Second, Guenther argues that the trial court errantly classified her two Missouri ordinance violations as misdemeanor crimes given that the municipal ordinances she violated are not classified either as misdemeanors or felonies. Instead, she alleges that the ordinances are "quasi-criminal" in nature. Third, Guenther argues that the trial court erred when it included her Lee's Summit, Missouri, municipal domestic assault violation in her criminal history because there is no evidence that she "had counsel or knowingly and voluntarily waived her right to counsel" when she was convicted of this violation.

Based upon these errors, Guenther asserts that this court should vacate her sentences and remand for resentencing without consideration of either Missouri ordinance violations. Significantly, according to her presentence investigation (PSI) report, Guenther had only one nonperson felony and one person felony in her criminal history. The person felony was the result of the trial court aggregating the three previously mentioned municipal ordinance violations which it determined to be person misdemeanors. The PSI report does not state whether the trial court classified Guenther's Missouri ordinance violations as class A or B misdemeanors. All the same, under K.S.A. 2014 Supp. 21-6811(a), every "three prior adult convictions or juvenile adjudications of

7

class A and class B person misdemeanors" in a defendant's criminal history are to be aggregated into a single person felony.

Thus, even though it is not stated in the PSI report, it is readily apparent that the trial court determined that Guenther's Missouri ordinance violations constituted either class A or class B person misdemeanors. It is also readily apparent that any finding that the trial court erred by classifying either Missouri ordinance violation as a class A or class B misdemeanor *or* generally as a misdemeanor crime would result in changing her criminal history score from C to G. See K.S.A. 2014 Supp. 21-6809 (stating that offenders with one person felony and one nonperson felony have a criminal history score of C, while offenders with only one nonperson felony have a criminal history score of G.)

*Standard of Review*

Appellate courts exercise unlimited review while considering whether a defendant's sentence is illegal. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Additionally, to the extent Guenther's arguments involve statutory interpretation, statutory interpretation also involves a question of law over which this court has unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

*Preservation*

Under K.S.A. 2017 Supp. 22-3504(3), illegal sentences include any sentence "that does not conform to the applicable statutory provision, either in character or punishment." K.S.A. 2017 Supp. 22-3504(1) states "courts may correct an illegal sentence at any time." Our Supreme Court has held that defendants' challenges concerning their criminal history involve challenges to the legality of their sentences under K.S.A. 2017 Supp. 22-3504(c). See *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Thus, Guenther's arguments concerning her criminal history are actually

8

challenges to the legality of her sentence. Because courts may correct an illegal sentence "at any time," Guenther can raise her arguments alleging that the trial court erred when calculating her criminal history for the first time on appeal. See 301 Kan. at 1034.

*Relevant Statutes*

"Criminal statutes and penalties in effect at the time of a criminal offense are controlling." *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2004). Guenther committed her possession of methamphetamine offense in 14 CR 535 on June 6, 2014, and she committed her possession of methamphetamine offense in 14 CR 1157 on November 26, 2014.

The criminal history classification statute that was in effect between July 1, 2012, and April 2, 2015, stated:

"(e) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime. Convictions or adjudications occurring within the federal system, other state systems, the District of Columbia, foreign, tribal or military courts are considered out-of-state convictions or adjudications. The facts required to classify out-of-state adult convictions and juvenile adjudications shall be established by the state by a preponderance of the evidence." L. 2012, ch. 166, sec. 4; K.S.A. 2014 Supp. 21-6811(e).

In 2015, the Legislature made two separate amendments to K.S.A. 21-6811(e). First, on April 2, 2015, in House Bill 2053, the Legislature added language to K.S.A. 21-6811(e), clarifying that courts must look to the comparable offense "under the Kansas

criminal code in effect on the date the current crime of conviction was committed" when determining whether a crime is a person or nonperson crime. If no comparable crime exists, courts must classify the prior out-of-state conviction as a nonperson crime. The April 2, 2015 amendment also included a new subsection—subsection (j). K.S.A. 21-6811(j) stated: "The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." L 2015, ch. 5, sec. 2.

Second, on July 1, 2015, in House Bill 2055, the Legislature added the following language to K.S.A. 21-6811(e):

> "If a crime is a misdemeanor in another state, the state of Kansas shall refer to the comparable offense in order to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable misdemeanor crime in the state of Kansas is a felony, the out-of-state crime shall be classified as a class A misdemeanor. If the state of Kansas does not have a comparable crime, the out-of-state crime shall not be used in classifying the offender's criminal history." L. 2015, ch. 90, sec. 2; K.S.A. 2015 Supp. 21-6811(e)(2)(B).

The Legislature also amended the recently created K.S.A. 21-6811(j). Now, instead of generally stating that the amendments made to "the act" are procedural in nature, the amended K.S.A. 21-6811(j) stated: "The amendments made to this section by *2015 House Bill No. 2053* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) L. 2015, ch. 90, sec. 2; K.S.A. 2015 Supp. 21-6811(j).

*Discrepancy with K.S.A. 21-6811(j)*

At this juncture, it is important to note an apparent discrepancy with K.S.A. 21-6811(j). In the 2016 and 2017 Kansas Statutes Annotated supplements, K.S.A. 21-6811(j) states: "The amendments made to this section by *chapter 5 of the 2015 Session Laws of Kansas* are procedural in nature and shall be construed and applied retroactively."

(Emphasis added.) As a result, it would seem that the Legislature amended K.S.A. 21-6811(j). Yet, in 2016, the only amendments to K.S.A. 21-6811 did not concern subsection (j). House Bill 2463, which went into effect July 1, 2016, made one minor amendment to subsection (f). Subsection (j) remained unaltered, continuing to state: "The amendments made to this section by *2015 House Bill No. 2053* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) L. 2016, ch. 97, sec. 2. Additionally, in 2017, there were no amendments to K.S.A. 21-6811 at all. Thus, although the 2016 and 2017 supplements contain the "chapter 5 of the 2015 Session Laws of Kansas" language under K.S.A. 21-6811(j), the Legislature did not actually pass law supporting this language.

Indeed, no bill containing this language was passed by the Legislature until February 22, 2018, with the passing of House Bill 2439. House Bill 2439 will become law effective July 1, 2018. House Bill 2439 simply makes a minor amendment to K.S.A. 21-6811 to address more significant amendments made to the battery law. On March 14, 2018, the Legislature passed House Bill 2567, another bill amending K.S.A. 21-6811 that contains the "chapter 5 of the 2015 Session Laws of Kansas" language under subsection (j). House Bill 2567 amends K.S.A. 21-6811(e) to provide a method to classify a defendant's out-of-state crime as a felony or misdemeanor if the out-of-state jurisdiction does not classify the defendant's out-of-state crimes as either a felony or misdemeanor by comparing the out-of-state crime to the most comparable Kansas offense. For House Bill 2567, however, the Legislature made the law effective upon publication, which was March 29, 2018.

Thus, with the passing and publication of House Bill 2567, K.S.A. 21-6811(j) has been amended by the Legislature. In turn, K.S.A. 21-6811(j) currently reads: "The amendments made to this section by chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied retroactively."

11

*Out-of-State Class A or B Misdemeanor Violations*

Guenther's first argument involves omissions in the version of K.S.A. 21-6811(e) that was in effect when she committed the two counts of possession of methamphetamine at issue in this case. Once again, Guenther committed both crimes in 2014. K.S.A. 2014 Supp. 21-6811(a) provided that every "three prior adult convictions or juvenile adjudications of class A and class B person misdemeanors" in a defendant's criminal history may be aggregated into a single person felony. Yet, K.S.A. 2014 Supp. 21-6811(e) simply stated "[a]n out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction." Thus, K.S.A. 2014 Supp. 21-6811(e) provides no guidance on how to classify a defendant's prior out-of-state misdemeanor as A, B, or C misdemeanors for criminal history purposes.

In making this specific argument, Guenther does not contest the trial court's finding that her Missouri ordinance violations constituted misdemeanor crimes. Instead, Guenther's argument is that because no language within K.S.A. 2014 Supp. 21-6811(e) provided the trial court with a mechanism to determine if her ordinance violations constituted A, B, or C misdemeanors, the trial court was barred from classifying her violations as A, B, or C misdemeanors. In turn, she argues that the court could not have known if her violations constituted either A or B misdemeanors as required to aggregate them together to form a single person felony under K.S.A. 2014 Supp. 21-6811(a). For this reason, Guenther asks us to vacate her sentences as illegal.

The State does not contest the fact that when Guenther committed her crimes, there was no mechanism under K.S.A. 2014 Supp. 21-6811(e) to classify her previous Missouri ordinance violations as class A, B, or C misdemeanors. Citing the 2015 amendments to K.S.A. 21-6811(e) and (j) in House Bill 2055, the State responds that the amendments in House Bill 2055 are retroactive.

12

In making its arguments, the State recognizes two recent opinions from this court that do not support its arguments—*State v. Murphy*, No. 115,260, 2017 WL 2001598, at *3-5 (Kan. App. 2017) (unpublished opinion), and *State v. Crocker*, No. 114,805, 2017 WL 2001610, at *7 (Kan. App. 2017) (unpublished opinion), *petition for rev. denied* 307 Kan. ___ (Nov. 6, 2017). Nevertheless, the State alleges that those cases were errantly decided. The State also alleges that during the 2017 legislative session, the following amendment to K.S.A. 21-6811(j) was being considered: "The amendments to this section by this act are procedural in nature and shall be construed and applied retroactively." The State seemingly asserts that this potential amendment is a sign of our Legislature's intent, which means this court can resolve this argument in favor of it.

The State's arguments are flawed for a number of reasons. To begin with, outside of referring to "Lexis Advance through the 2017 Regular Session," the State has not cited where exactly this proposed legislation can be found. Indeed, the State has not explained in what manner this legislation was proposed and how far this proposed legislation advanced to becoming a bill or law in the 2017 session. Moreover, as explained in the preceding section, in 2017, the Legislature did not amend K.S.A. 21-6811. Thus, K.S.A. 21-6811(j) clearly was not amended in the manner the State suggests that the Legislature was contemplating. Moreover, 2018 House Bill 2567 establishes that it is not the Legislature's intent to amend K.S.A. 21-6811(j) to broadly state that all amendments to K.S.A. 21-6811 are procedural and retroactive.

Once more, under 2018 House Bill 2567, K.S.A. 21-6811(j) provides the following: "The amendments made to this section by *chapter 5 of the 2015 Session Laws of Kansas* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) Importantly, the amendments made by House Bill 2053, that is, the amendments clarifying that the date of the defendants' current crime of conviction controls for criminal history calculation purposes, were made under chapter 5 of the 2015 Session Laws; while the amendments made by House Bill 2055, that is, the amendments

13

creating a mechanism to classify defendants' prior out-of-state misdemeanors as class A, B, or C, were made under chapter 90 of the 2015 Session Laws. As a result, the most recent version of K.S.A. 21-6811(j) reaffirms the previous version of K.S.A. 21-6811(j) stating that "[t]he amendments made . . . by 2015 House Bill No. 2053 [were] procedural in nature and [should] be construed and applied retroactively." L. 2015, ch. 90, sec. 2. In consequence, this latest amendment to K.S.A. 21-6811(j) further undermines the State's argument.

Next, the *Murphy* court provided an in depth analysis about why the 2015 House Bill 2055 amendments to K.S.A. 21-6811(e) were not retroactive. The *Murphy* court explained:

"When the legislature amended K.S.A. 2015 Supp. 21-6811 in House Bill 2053 to clarify that classification of prior out-of-state convictions as person or nonperson offenses must be based on the comparable Kansas offense in effect when the current crime was committed, the legislature added a provision to the statute stating its intent that the amendment apply retroactively. L. 2015, ch. 5, sec. 2(j) ('The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively.'). When the legislature amended K.S.A. 2015 Supp. 21-6811 in House Bill 2055 to create a procedure for scoring out-of-state misdemeanors as class A, B, or C, based on comparable Kansas offenses, the legislature made clear its intention that the retroactivity provision in the statute be applied only to the amendments made by House Bill 2053 and not to those made by House Bill 2055. L. 2015, ch. 90, sec. 2(j) ('The amendments made to this section by *2015 House Bill No. 2053* are procedural in nature and shall be construed and applied retroactively.'). House Bill 2055 deleted the existing retroactivity language, which stated that the amendments of 'this act' apply retroactively. If that language had not been deleted, the State's retroactivity argument would be more persuasive. But the legislature narrowed the language to clarify that only the amendments made by '2015 House Bill No. 2053' apply retroactively. L. 2015, ch. 90, sec. 2(j); see *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006) (ordinary words are to be given ordinary meaning and when statute is plain and unambiguous, appellate court must give

14

effect to legislature's intent as expressed rather than determining what law should or should not be)." 2017 WL 2001598, at * 4.

Because of the preceding problems, the *Murphy* court vacated Murphy's sentence as illegal. The *Murphy* court concluded that the trial court had erred when it classified Murphy's prior Kentucky misdemeanors as class A misdemeanors for criminal history purposes given that no mechanism for classifying his Kentucky misdemeanors as class A misdemeanors existed when he committed his crimes. 2017 WL 2001598, at *5.

In *Crocker*, the trial court had aggregated Crocker's three previous Missouri misdemeanor assault convictions together to count as one person felony for criminal history purposes. 2017 WL 2001610, at *4. Crocker challenged the aggregation of the Missouri misdemeanor assault convictions into a single person felony because when he committed his current crime of conviction, there was no way to determine if his Missouri misdemeanors constituted class A, B, or C misdemeanors under K.S.A. 2012 Supp. 21-6811(e). 2017 WL 2001610, at *7-8. The *Crocker* court accepted Crocker's argument, holding:

> "Although the 2015 amendment to the statute directs the court to determine the severity level of an out-of-state misdemeanor by looking at the comparable Kansas crime, these provisions were not in effect in 2012 or 2013 and, therefore, cannot be used in classifying Crocker's Missouri convictions for common assault as equivalent to class A, B, or C Kansas misdemeanors. By extension, this obviously means that any conversion of Missouri person misdemeanors to a person felony by treating them as prior class A or B person misdemeanors is legally impermissible. In short, deriving any criminal history score by aggregating such unclassifiable misdemeanor convictions to a person felony is reversible error." 2017 WL 2001610, at *8.

The State's sole argument why this court should reject the *Murphy* and *Crocker* courts' reasoning that the amendments in 2015 House Bill 2055 are not retroactive can be tersely summed up as follows:  "[T]he State would contend the logic the appellate court

15

has thus far applied finding that K.S.A. 2015 Supp. 21-6811(j) does not apply to (e)(2)(B) is incorrect . . ." Yet, the State's argument presupposes what it endeavors to show; namely, that the retroactivity provision of 2015 House Bill No. 2053 controls this issue. Nevertheless, as shown by the analysis in both *Murphy* and *Crocker*, the State's conclusory assertion is unfounded. The Legislature could not have been clearer when it amended K.S.A. 21-6811(j) to state that only the amendments in 2015 House Bill 2053 were procedural in nature and, therefore, retroactive. This amendment plainly means that only amendments to K.S.A. 21-6811 made by 2015 House Bill 2053 are retroactive. On the other hand, this amendment means that all other amendments, including the amendments made by 2015 House Bill 2055, are not retroactive.

In summary, the date defendants commit their crimes controls what sentencing laws the court must impose. See *Denney*, 278 Kan. at 646. Guenther committed both of her possession of methamphetamine crimes in 2014. In 2014, K.S.A. 21-6811(a) allowed courts to aggregate three class A or B person misdemeanors into a single person felony for criminal history purposes, and K.S.A. 21-6811(e) stated that defendants' prior out-of-state convictions will be classified as a misdemeanor or a felony according to the convicting jurisdiction. But at the same time, K.S.A. 21-6811(e) did not provide a mechanism for classifying out-of-state misdemeanor convictions as class A, B, or C crimes. K.S.A. 2014 Supp. 21-6811; L. 2012, ch. 166, sec. 4. Despite the State's arguments to the contrary, K.S.A. 2015 Supp. 21-6811(j)'s provision providing that "the amendments made to this section by 2015 House Bill No. 2053 are procedural in nature and shall be construed and applied retroactively" does not apply to the amendments made by 2015 House Bill 2055. Both the plain language of K.S.A. 21-6811(j) and the *Murphy* and *Crocker* decisions support this conclusion.

Further, the *Murphy* and *Crocker* decisions also support the conclusion that the trial court was prohibited from classifying her ordinance violations as either class A or B misdemeanors for the purposes of aggregation because the version of K.S.A. 21-6811(e)

16

in effect when Guenther committed her crimes lacked a mechanism for classifying her Missouri ordinance violations as class A, B, or C misdemeanors. As a result, Guenther's sentences are illegal. Accordingly, we vacate Guenther's sentences in both 14 CR 0535 and 14 CR 1157 and remand for resentencing without consideration of her Missouri municipal ordinance violations for criminal history purposes.

*Out-of-State Misdemeanor Violations*

Alternatively, Guenther argues that her sentences are illegal because the trial court errantly classified her two Missouri municipal ordinance violations as misdemeanor crimes given that the municipal ordinances she violated are not classified as misdemeanors or felonies. Guenther asserts that the ordinances are classified as a "quasi-criminal" in nature. We find merit in this argument. Indeed, the plain language of the two Missouri municipal ordinances that she violated establishes that neither ordinance is classified as a felony or misdemeanor.

Once more, Guenther's criminal history included a 2002 violation for domestic assault in Lee's Summit, Missouri, and a 1999 violation for endangering the welfare of a child in Kansas City, Missouri.

In its entirety, domestic assault under Section 17-59 (2001) of Lee's Summit's municipal ordinance states:

> "A. A person commits the crime of domestic assault in the third degree if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor, as defined in Section 455.010, RSMo, and:
>
>> 1. The person attempts to cause or recklessly causes physical injury to such family or household member; or

17

2. With criminal negligence the person causes physical injury to such family or household member by means of a deadly weapon or dangerous instrument; or

3. The person purposely places such family or household member in apprehension or immediate physical injury by any means; or

4. The person recklessly engages in conduct which creates a grave risk of death or serious physical injury to such family or household member; or

5. The person knowingly causes physical contact with such family or household member knowing the other person will regard the contact as offensive; or

6. The person knowingly attempts to cause or causes the isolation of such family or household member by unreasonably and substantially restricting or limiting such family or household member's access to other persons, telecommunication devices or transportation for the purpose of isolation.

"B. Any person violating any of the above sections shall be subject to the full range of punishment provided by Section 1-13.A. of the Code."

Section 1-13.A. allows for punishment not greater than a $500 fine and 90 days' imprisonment.

Kansas City, Missouri's "endangering the welfare of a child" ordinance—Section 50-231 (1967)—states:

"(a) A person commits the ordinance violation of endangering the welfare of a child if he:

(1) With criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child less than 17 years old;

(2) Knowingly encourages, aids or causes a child less than 17 years of age to engage in any conduct which causes or tends to cause the child to come within the provisions of RSMo 211.031(1)(2)(d) or (1)(3)1;

(3) Being a parent, guardian or other person legally charged with the care or custody of a child less than 17 years old, recklessly fails or refuses to exercise reasonable diligence in the care or control of such child to prevent him from coming within the provisions of RSMo 211.031(1)(1)(c), (1)(2)(d) or (1)(3)1; or

18

(4) Knowingly encourages, aids or causes a child less than 17 years of age to enter into any room, building or other structure which is a public nuisance as defined in RSMo 195.130.

"(b) Nothing in this section shall be construed to mean the welfare of a child is endangered for the sole reason that he is being provided nonmedical remedial treatment recognized and permitted under the laws of this state."

There is no penalty provision within the plain language of Section 50-231.

Because she believes her prior Missouri ordinance violations were merely "quasi-criminal" in nature, Guenther argues that the trial court was prohibited from considering them in her criminal history. In making her argument, Guenther asserts that this court's previous decision in *State v. Hernandez*, 24 Kan. App. 2d 285, Syl. ¶ 2, 944 P.2d 188 (1997), was wrongly decided. Meanwhile, Guenther argues that this court should adopt the analysis of *State v. Smith*, No. 116,586, 2017 WL 4558253, at *2, 5 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* November 8, 2017. In *Smith*, this panel held that Missouri ordinance violations cannot be considered in a defendant's criminal history because they are "quasi-criminal" in nature.

The State recognizes that *Smith* is on point. Nevertheless, the State argues that this court should not adopt the *Smith* court's analysis because the "decision does not have binding authority." The State's remaining arguments focus primarily on comparing Guenther's Missouri ordinance violations to similar Kansas offenses to determine if the violations constitute misdemeanor or person crimes.

Yet, under K.S.A. 2014 Supp. 21-6811(e), the test for determining whether a crime constitutes a felony or a misdemeanor is not whether that crime has a comparable Kansas offense. Instead, it is based upon how the convicting jurisdiction classified the crime: "An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction." K.S.A. 2014 Supp. 21-6811(e). Also,

19

Guenther's current argument does not involve the person-nonperson crime classification. Instead, it involves whether her prior Missouri ordinance violations can count as misdemeanors given that the ordinances she violated are not classified as felonies or misdemeanors. Therefore, the State's arguments concerning the person-nonperson crime classification are irrelevant.

Moreover, Guenther's arguments concerning *Hernandez* and *Smith* are persuasive. In *Hernandez*, this court held that if the convicting jurisdiction did not classify crimes as either misdemeanors or felonies, a sentencing court can determine whether the defendant's prior out-of-state crime constituted a misdemeanor or felony crime by looking to the most comparable Kansas crime. 24 Kan. App. 2d at 288-89. If the most comparable Kansas crime was a felony crime, the defendant's prior out-of-state conviction would be classified as a felony for criminal history purposes. On the other hand, if the most comparable Kansas crime was a misdemeanor crime, the defendant's prior out-of-state conviction would be classified as a misdemeanor for criminal history purposes. The *Hernandez* court determined that the preceding method was in line with the Legislature's intent by construing the Kansas Sentencing Guidelines Act (KSGA) *in pari materia*. 24 Kan. App. 2d at 288-89.

Recently, however, in *State v. Horselooking*, 54 Kan. App. 2d 343, Syl. ¶ 7, 400 P.3d 189 (2017), *petition for rev. granted* 307 Kan. ___ (Dec. 22, 2017), a panel of this court rejected the *Hernandez* court's analysis. Highly summarized, the *Horselooking* court held that the "KSGA expressly provide[d] how a sentencing court shall classify an out-of-state conviction if the crime [was] a felony or a misdemeanor in the convicting jurisdiction." 54 Kan. App. 2d at 347. Nevertheless, the *Horselooking* court pointed out that if the additional steps sanctioned in *Hernandez* were allowed, that is, divining an unstated statutory purpose when the out-of-state crime was not classified as either a felony or misdemeanor, this would erase the plain meaning of K.S.A. 21-6811(e). 54 Kan. App. 2d at 350. Indeed, the *Horselooking* court emphasized that the language of

20

K.S.A. 21-6811(e) was plain and unambiguous, meaning that courts should not speculate about the Legislature's intent, "which [was] exactly what the panel of this court did in *Hernandez*." 54 Kan. App. 2d at 350.

The *Horselooking* court further emphasized that in *State v. Keel*, 302 Kan. 560, 572-73, 357 P.3d 251 (2015), our Supreme Court warned against filling in "silence gaps" within statutes, that is, creating answers with speculation about the Legislature's intent in situations where a statute is plain and unambiguous but does not provide guidance on the particular issue at hand. 54 Kan. App. 2d at 350-52. Indeed, in *Keel*, our Supreme Court held that the "default position" in "silence gap" situations was to "defer to the legislature to act to fill such a gap." 302 Kan. at 573.

The *Smith* court relied very heavily on the *Horselooking* court's analysis. In *Smith*, the trial court had aggregated two Kansas person misdemeanors with Smith's prior Lake Lotawana, Missouri, municipal ordinance violation for endangering the welfare of a child to form a single person felony. 2017 WL 4558253, at *1. Smith challenged the use of her Missouri ordinance violation for criminal history purposes, arguing that under Missouri law, ordinance violations are not considered criminal violations. Therefore, Smith argued that her violation could not be used for criminal history calculation purposes. The *Smith* court agreed, adopting the analysis in *Horselooking*. 2017 WL 4558253, at *5. In doing so, the *Smith* court explained:

> "Smith is correct in asserting that Missouri does not classify municipal ordinance violations as misdemeanors or felonies, or even crimes; rather, Missouri considers municipal ordinance violations to be 'quasi-criminal in nature.' *Strode v. Director of Revenue*, 724 S.W.2d 245, 247 (Mo. 1987); see also *City of Ferguson v. Nelson*, 438 S.W.2d 249, 255 (Mo. 1969) ('We have often said that an action for the violation of a city or town ordinance is to be regarded as a civil action for the recovery of a penalty, and that it is not a prosecution for crime.'). The State does not dispute this point.
>    . . . .

21

". . . Because the KSGA is silent on how to classify an out-of-state ordinance violation when the convicting jurisdiction does not consider an ordinance violation to be a crime, then under the rationale of *Horselooking* and the rule of lenity, the district court erred in classifying Smith's Missouri ordinance violation of endangering the welfare of a child as a person misdemeanor and aggregating that ordinance violation with the two Johnson County, Kansas, person misdemeanor convictions to form one person felony. In this instance, because Missouri does not classify municipal ordinance violations as a crime, Smith's Lake Lotawana, Missouri, ordinance violation for endangering the welfare of a child should not have been scored at all in her criminal history. See K.S.A. 2015 Supp. 21-6811(e)(1) (out-of-state convictions shall be used in classifying the offender's criminal history)." 2017 WL 4558253, at *2, 5.

Guenther's case is very similar to the *Smith* case. Neither the Lee's Summit "domestic assault" ordinance nor the Kansas City "endangering the welfare of a child" ordinance classify the violations as felonies or misdemeanors. Moreover, Missouri does not consider ordinance violations to be criminal violations. Yet, the trial court classified Guenther's Missouri ordinance violations as misdemeanors for criminal history purposes and aggregated these violations along with her Kansas ordinance violation to create a single person felony. This resulted in raising her criminal history score from G to C.

As we noted in the preceding section, the Legislature very recently passed 2018 House Bill 2567, which amends K.S.A. 21-6811(e) so a defendant's out-of-state crime can be classified a felony or misdemeanor if the out-of-state jurisdiction does not classify the defendant's out-of-state crimes as a felony or misdemeanor by simply comparing the out-of-state crime to the most comparable Kansas offense. Thus, by passing 2018 House Bill 2567, the Legislature filled the "silence gap" the *Horselooking* court illuminated. Indeed, testimony accepted by the Senate and the House by the Kansas Sentencing Commission stated that the "[*Horselooking*] court invited legislative action to remedy what it termed as a 'defect' to be remedied." Senate Judiciary Committee (Letter dated March 6, 2018); House Corrections and Juvenile Justice Committee (Letter dated

22

February 7, 2018). Arguably, by enacting 2018 House Bill 2567, the Legislature recognized that before the amendment, there was no explicit mechanism under K.S.A. 21-6811(e) allowing courts to compare a defendant's out-of-state crime to a Kansas crime to determine if it was a felony or misdemeanor for criminal history purposes when the out-of-state convicting jurisdiction did not classify the crime as either a felony or misdemeanor.

Most importantly for Guenther, however, when it enacted 2018 House Bill 2567, the Legislature did not enact any language stating that the amended language under K.S.A. 21-6811(e) was retroactive. Accordingly, we find that the amended language under 2018 House Bill 2567 allowing courts to compare a defendant's out-of-state crime to a Kansas crime to determine if it is a felony or misdemeanor for criminal history purposes when the out-of-state convicting jurisdiction does not classify the crime as either a felony or misdemeanor inapplicable to Guenther's case.

This means K.S.A. 2014 Supp. 21-6811(e), which simply states "[a]n out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction" applies in Guenther's case. As a result, because Guenther's Missouri ordinance violations contain no language classifying them as either misdemeanors or felonies and are considered quasi-criminal under Missouri law, the trial court erred by using Guenther's violations for criminal history purposes.

Because we have vacated Guenther's sentences on other grounds, it is unnecessary for us to address Guenther's uncounseled misdemeanor contention.

Affirmed in part, sentences vacated, and remanded for resentencing in both 14 CR 0535 and 14 CR 1157 cases without consideration of the two Missouri municipal ordinance violations.